UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE ESTATE OF CHARLES STEPNEY, ) <br> EIBUR MUSIC, INC., as Trustee ) <br> THE STEPNEY LEGACY TRUST ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SONY MUSIC HOLDINGS, INC., and ) <br> a Delaware Corporation, ) <br> ) <br> MAURICE WHITE, ) <br> an individual, ) <br> ) <br> Defendants. ) | Cause No.: <br><br> <u>JURY TRIAL DEMANDED</u> |

## COMPLAINT

Plaintiffs The Estate of Charles Stepney and Eiber Music, Inc., as Trustee for The Stepney Legacy Trust (collectively "Plaintiffs"), by and through their attorneys, Kayira LLP, for their Complaint against Defendants Sony Music Entertainment and Maurice White, respectfully state as follows:

## PARTIES

1. Plaintiff Estate of Charles Stepney (hereinafter the "Estate" or "Plaintiff") is the estate of the deceased producer, artist and songwriter Charles Stepney (hereinafter, "Mr. Stepney), and is an estate formed under the laws of the State of Illinois.

2. Plaintiff Eibur Music (hereinafter the "Trustee" or "Plaintiff") is the trustee of the Stepney Legacy Trust, a revocable trust of property.

3. Defendant Maurice White (hereinafter "M. White") is an individual domiciled in Los Angeles, California. Defendant M. White is engaged, and at all relevant times has been

1

engaged, in the entertainment industry as a recording artist, performer, producer, and songwriter for the popular recording and performance group Earth, Wind & Fire (as hereinafter described, "EWF").

4. Defendant Sony Music Holdings, Inc. (hereinafter "Sony"), formerly named Sony Music Entertainment Inc., is a Delaware corporation registered to do business in the State of Illinois and with a principal place of business in New York City, New York. Defendant Sony currently owns and operates Columbia Records. Defendant Sony is a record company that claims an interest in one or more Recordings (as hereinafter defined), and/or has exercised rights of an owner of one or more Recordings, and/or is a necessary party for the accounting relief requested herein.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction based upon diversity of the parties, as provided in 28 U.S.C. § 1332(a). Plaintiff Estate is an estate formed under the laws of the State of Illinois. Plaintiff Eibur Music is the named Trustee for The Stepney Legacy Trust, formed under the laws of the State of Illinois. Defendant M. White is an individual residing in California. Defendant Sony is a Delaware corporation with a principal place of business in New York City, New York. The matter in controversy exceeds seventy-five thousand dollars ($75,000.00).

6. This Court has personal jurisdiction over the Defendants pursuant to 735 ILCS 5/2-209. Defendants have substantial contacts with the State of Illinois and regularly solicit business in this district and/or derive substantial revenue from sales of goods in this district and/or otherwise have engaged in a persistent course of conduct in this district. Additionally, Plaintiffs' causes of action arise from Defendants' transaction of business in this state, the

making and performance of a contract in this state, and Defendants have caused tortious injury in this judicial district by acts both within and outside this district.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) which states, in pertinent part, "[a] civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in…(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is subject to the action is situated.

## FACTUAL ALLEGATIONS

8. Prior to forming EWF, Defendant M. White was a session drummer for the Chess Records record label located in Chicago, Illinois. Beginning in 1967 and ending in 1969, M. White played steadily with the musical recording group The Ramsey Lewis Trio.

9. On or around March 1968, Mr. Stepney entered into a producer agreement with Chess Records ("Chess Producer Agreement"), whereby Mr. Stepney would render his services as a record producer exclusively for Chess Records. *See* Chess Producer Agreement, marked as **Exhibit 1**, attached hereto and incorporated herein by reference. Upon information and belief, the Chess Producer Agreement is consistent with and reflects the then current industry standards, customs, and practices with respect to the subject matter of the Chess Producer Agreement.

10. Pursuant to the Chess Producer Agreement, Mr. Stepney produced a volume of recordings exclusively for Chess Records and its designees, including, but not limited to, recordings for The Ramsey Lewis Trio.

11. At or around this time, Defendant M. White and Mr. Stepney formed a strong personal and professional relationship.

12.     In 1969, Defendant M. White left The Ramsey Lewis Trio and joined two friends to form a songwriting team. After a short period, the songwriting team signed a recording contract with the record label Warner Bros., and adopted to name Earth, Wind and Fire ("Earth No. 1").

13.     Upon information and belief, Warner Bros. agreed to reproduce, distribute, and/or otherwise commercially exploit records by Earth No. 1 and administer the distribution of revenues generated thereby.

14.     At or around this time, Earth No. 1 began recruiting new members. Between 1970 and 1972, Earth No. 1 recorded two albums for Warner Bros.

15.     Sometime in 1972, Defendant M. White dissolved Earth No. 1. He recruited new members to form a second line-up for the recording group Earth, Wind and Fire ("EWF"). Upon information and belief, EWF succeeded Earth No. 1 in interest to the recording contract with Warner Bros.

16.     At or around this time, the record label Columbia Records purchased EWF's recording contract from Warner Bros, thereby assuming the obligations of Warner Bros. under the recording contract with EWF.

17.     Sometime before 1974, Defendant M. White solicited the talents of Mr. Stepney as a producer for EWF. At this time, Mr. Stepney was domiciled in Chicago, Illinois. Upon information and belief, a significant and substantial portion of the negotiations between Mr. Stepney and Defendant M. White occurred in Chicago, Illinois.

18.     Upon information and belief, Mr. Stepney and Defendant M. White orally agreed that Mr. Stepney would be compensated for his services as a producer according to the then current industry standards and customs, including, but not limited to, the provision of producer

19.  Upon information and belief, and consistent with the terms of the Oral Agreement, Mr. Stepney and Defendant M. White expressly acknowledged and agreed that Columbia Records and/or its designee(s) would reproduce, distribute, and/or otherwise commercially exploit the sound recordings that were produced or co-produced by Mr. Stepney pursuant to the Oral Agreement, and along with Defendant M. White, would also administer the distribution of revenues generated thereby, including but not limited to producer royalties due and owing to Mr. Stepney.

20.  Pursuant to the Oral Agreement, Mr. Stepney produced or co-produced several sound recordings which appear on the album *Open Our Eyes*, EWF's first album to achieve Platinum status according to the Recording Industry Association of America.

21.  Until his untimely death on or around May 16, 1976, Mr. Stepney continued to produce or co-produce a volume of sound recordings for Defendants under the Oral Agreement ("Recordings"). Upon information and belief, and at all relevant times Mr. Stepney's performance under the Oral Agreement occurred in Chicago, Illinois. A non-exhaustive list of those Recordings is attached hereto. *See* EWF Producer List, marked as **Exhibit 2**, attached hereto and incorporated herein by reference.

22.  During his lifetime, Mr. Stepney did not receive any producer royalties, nor was he otherwise compensated for the exploitation of the Recordings by Defendants.

5

23. On or around May 17, 1976, Mr. Stepney passed away intestate and his rights under the Oral Agreement passed to the Estate. He was survived by his wife and three children as his only living heirs.

24. Sometime in 2008, Mr. Stepney's wife passed away, leaving his three children as his only living heirs and only successors in interest to the Estate and the Oral Agreement.

25. On or around March 19, 2009, Mr. Stepney's three children created a revocable trust of property, including, among other things, Mr. Stepney's rights under the Oral Agreement in the Stepney Legacy Trust, naming Eibur Music as the Trustee.

26. Beginning with the release of *Open Our Eyes* in 1974 and through current periods, Defendant M. White has continuously reproduced, distributed, licensed and/or otherwise commercially exploited the Recordings for their own substantial financial benefit.

27. Beginning with its acquisition of Columbia Records in or around 1988 and through current periods, Defendant Sony has continuously reproduced, distributed, licensed, and/or otherwise commercially exploited the Recordings for its own substantial financial benefit.

28. To date, Plaintiffs have not received any producer royalties due and owing for the exploitation of the Recordings by Defendants.

29. To date, Plaintiffs have not otherwise been compensated for the exploitation of the Recordings by Defendants.

30. Though Defendants have generated considerable profits and commercial goodwill through the exploitation of the Recordings, Defendants have never rendered accounting statements to Mr. Stepney or Plaintiffs detailing producer royalties due and owing.

## COUNT I
### (Breach of Contract)

6

31. Plaintiffs hereby incorporate by reference the foregoing allegations set forth in this Complaint as if fully set forth herein.

32. Defendants' failures to pay Plaintiffs royalties and provide regular accountings due under the terms of the Oral Agreement constitute a material breach of the Oral Agreement.

33. Defendants' failure to pay Plaintiffs royalties and provide Plaintiffs with regular accountings due under the terms of the Oral Agreement constitutes a breach of the implied covenant of good faith and fair dealing imposed under every contract.

34. As a result of the foregoing breaches of the Oral Agreement, Defendants have caused Plaintiffs to suffer financial damages and loss of royalties.

35. Accordingly, Plaintiffs are entitled to an award of compensatory damages in an amount to be determined at trial, as well as an award of attorneys' fees, costs, and pre-and post-judgment interest.

## COUNT II
### (Breach of Fiduciary Duty)

36. Plaintiffs hereby incorporate by reference the foregoing allegations set forth in this Complaint as though fully set forth herein.

37. Under the terms of the Oral Agreement, Defendants assumed obligations and duties to collect royalties on Plaintiffs' behalf and disburse those royalties to Plaintiffs on a semiannual basis.

38. Under the terms of the Oral Agreement, Defendants assumed an obligation to account to Plaintiffs for all royalties collected from the sale and licensing of Recordings.

39. By virtue of the terms of the Oral Agreement, Defendants owed Plaintiffs a fiduciary duty of good faith, loyalty, and full disclosure.

40. Defendants have breached its fiduciary duties to Plaintiffs by intentionally and willfully failing to collect and disburse royalties for the Plaintiffs' behalf and failing to account to Plaintiffs for all royalties collected from the sale and licensing of Recordings.

41. As a result of the foregoing breaches of fiduciary duty, Defendants have caused Plaintiffs to suffer financial damages and loss of royalties.

42. Accordingly, Plaintiffs are entitled to an award of compensatory damages in an amount to be determined at trial, as well as an award of attorneys' fees, costs, pre-and post-judgment interest and punitive damages.

## COUNT III
### (Accounting)

43. Plaintiffs hereby incorporate by reference the foregoing allegations set forth in this Complaint as though fully set forth herein.

44. Pursuant to the Oral Agreement, Defendants assumed a contractual duty to provide Plaintiffs with regular accountings of all royalties generated from the sale and licensing of Recordings.

45. Defendants also had a fiduciary duty to provide Plaintiffs with regular accountings of all royalties generated by the sale and licensing of Recordings.

46. Defendants breached their contractual and fiduciary duties to Plaintiffs by failing to account for these royalties.

47. Due to Defendants' failure to account for royalties due to Plaintiffs, Plaintiffs do not know what royalties Defendants have received from the sale and licensing of Recordings, or the proper amount of royalties due to Plaintiffs.

48. Accordingly, Plaintiffs are entitled to a true and accurate accounting of all royalties collected by Defendants from the sale and licensing of Recordings, and the proper amount of royalties due to Plaintiffs.

## COUNT IV
### (Unjust Enrichment)

49. Plaintiffs hereby incorporate by reference the foregoing allegations set forth in this Complaint as though fully set forth herein.

50. Upon information and belief, a substantial amount, if not all of the Recordings were produced in one or more recording studios located in Chicago, Illinois. The Recordings were commercially released, manufactured and/or distributed by Defendants and/or their designees, and Defendants have received a substantial benefit therefrom.

51. Upon information and belief, Defendants generated considerable revenue and collected royalties from the sale and licensing of Recordings.

52. Defendants have retained those royalties collected from the sale and licensing of the Recordings, and have not otherwise compensated Plaintiffs for their use of the Recordings.

53. Plaintiffs have been otherwise unable to capitalize on the Recordings due to Defendants' exclusive possession thereof.

54. Due to Defendants' collection and retention of royalties and exclusive possession of the Recordings, Defendants have been unjustly enriched at Plaintiffs' expense.

55. Defendants should not in equity and good conscience be permitted to retain the benefits bestowed on them at the Plaintiffs' expense.

56. By reason of Defendants' unjust enrichment at Plaintiffs' expense, Plaintiffs are entitled to recover from Defendants the sum of such unjust enrichment.

57. Accordingly, Plaintiffs are entitled to an award of compensatory damages in an amount to be determined at trial, as well as an award of attorneys' fees, costs, and pre- and post-judgment interest.

## COUNT V
### (Constructive Trust)

58. Plaintiffs hereby incorporate by reference the foregoing allegations set forth in this Complaint as though fully set forth herein.

59. Under the terms of the Oral Agreement, Defendants assumed obligations and duties to collect royalties on Plaintiffs' behalf and disburse those royalties to Plaintiffs on a semiannual basis.

60. Under the terms of the Oral Agreement, Defendants assumed the obligation to account to Plaintiffs for all royalties collected from the sale and licensing of Recordings.

61. By virtue of the terms of the Oral Agreement, Defendants owed Plaintiffs a fiduciary duty of good faith, loyalty, and full disclosure.

62. In reliance on those representations made in the Oral Agreement, Mr. Stepney and Plaintiffs adhered to their contractual obligations, which generated royalties and revenue for Defendants through the sale and licensing of Recordings.

63. Defendants have breached their fiduciary duties to Plaintiffs by failing to collect and disburse royalties for the Plaintiffs' behalf and failing to account to Plaintiffs for all royalties collected from the sale and licensing of Recordings.

64. By collecting and retaining royalties due to Plaintiffs, Defendants have been unjustly enriched at the Plaintiffs' expense.

65. Accordingly, Plaintiffs are entitled to the imposition of a constructive trust on all past and future royalties due to Plaintiffs from Defendants.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

a. an award of compensatory damages in an amount to be determined at trial;

b. an award of punitive damages in an amount to be determined at trial;

c. a true and accurate accounting of all royalties collected by Defendants from the sale and licensing of recordings produced by Mr. Stepney, and the proper amount of royalties due to Plaintiffs;

d. the imposition of a constructive trust on all past and future royalties due to Plaintiffs from Defendants;

e. an award of attorneys' fees, costs, and pre- and post-judgment interest; and

f. all other and further relief as the Court may deem just and proper.

Respectfully Submitted,

KAYIRA, LLP


By: __/s/ Eric F. Kayira_____
    Eric F. Kayira, Bar No.: 50672
    10 S. Lyle Ave.
    Clayton, MO 63105
    Telephone: 314-727-3100
    Facsimile: 314-727-3101

AND

MCCAIN LAW OFFICES, P.C.,


By: __/s/Trent A. McCain_____
    Trent A. McCain, IL ARDC#6277990
    5655 Broadway
    Merrillville, IN 46410
    Telephone: 219-884-0696
    Facsimile: 219-884-0692

*Attorneys for the Plaintiff*